No. 47,049

STATE OF KANSAS, *Appellee, v.* KENNETH D. DUNHAM, *Appellant.*

(517 P. 2d 150)

Opinion filed December 8, 1972.

*William E. Enright,* of Scott, Quinlan & Hecht, of Topeka, argued the cause and *Robert D. Hecht,* of the same firm, was with him on the brief for the appellant.

*Larry R. Mears,* Assistant County Attorney, argued the cause, and *Vern Miller,* Attorney General, and *J. David Farris,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: On October 8, 1971, defendant was convicted on a plea of guilty of taking indecent liberties with a ward as defined in K. S. A. 1972 Supp. 21-3504. The imposition of sentence was suspended and defendant granted probation. On October 21, 1971, the state filed a motion for revocation of defendant's probation. After a full hearing on November 18, 1971, probation was revoked. The matter was then continued and a sentencing hearing was scheduled for December 16, 1971, after which defendant was sentenced to a term of five years pursuant to the provisions of K. S. A. 1972 Supp. 21-4501 (*b*). Thereafter defendant filed a motion to set aside his plea of guilty. The date of the filing is not shown. Hearings were had on this motion on April 10, 13 and 18, 1972. In the meantime defendant filed a new application for probation. Testimony was submitted at all three hearings. At the conclusion of the hearing on April 18, the trial court overruled defendant's motion to set aside his plea and denied his application for probation. Defendant appeals from his judgment of conviction, the order revoking the probation, and the overruling of his motion to withdraw his plea.

The state has filed a motion to dismiss the appeal and strenuously argues that appeal by defendant after a plea of guilty is precluded by the provisions of K. S. A. 1972 Supp. 22-3601. Insofar as defendant's appeal from his conviction is concerned the state is on solid ground. We have held that 22-3601 expressly precludes appellate review in criminal cases where the defendant pled guilty after July 1, 1970, and that this court has no jurisdiction of such a purported appeal. (*State v. Scott,* 211 Kan. 68, 505 P. 2d 703; and

*State v. Mitchell,* 210 Kan. 470, 502 P. 2d 850.) As the state points out, the issues raised by defendant concerning his conviction could have all been raised and adjudicated in a proceeding under K. S. A. 60-1507. At oral argument counsel for defendant and the state were interrogated concerning the nature of the issues raised. We were informed by counsel for both parties and it was agreed by them that insofar as the issues pertaining to defendant's conviction are concerned the proceedings below were actually treated, considered, and adjudicated in the same manner as if initiated by a motion under 60-1507 and, likewise, could be so treated on this appeal to this court. Under the circumstances we shall pass over the state's motion to dismiss and consider the issues raised by defendant concerning his conviction together with those alleged errors directed at the revocation of his probation.

The points specified and the arguments made concerning the alleged errors of the trial court in accepting defendant's plea of guilty and subsequently in overruling his motion to withdraw his plea are interwoven and will be considered and discussed together.

At this point, we pause to comment that we are confronted with a two hundred and seven page record in which the testimony of the various witnesses at the various hearings is not indexed so as to reflect at what page the testimony of a certain witness appears. This condition of the record adds to our burden and is not in compliance with Rule No. 6 (g) (209 Kan. xxiv.) of our rules of appellate practice. We also note that some twenty-five pages of the record have been duplicated; a result, no doubt, of the lack of coordination between counsel with respect to designation and counterdesignation.

Defendant first contends that because of drugs and medicines which he claimed he had taken he was not in full possession of his faculties at the time he entered his plea and that the trial court was aware of his condition. Defendant advanced this same argument in support of his motion to withdraw his plea.

The record of the proceedings on arraignment on October 8, 1971, indicates that the trial court took painstaking care in meeting the requirements of K. S. A. 1972 Supp. 22-3210 before accepting defendant's plea. The court personally interrogated defendant at length and in detail concerning the facts of the offense charged and the voluntariness of his plea. Defendant was fully informed con-

cerning his right to a jury trial, the right to remain silent, and that the court was not bound to carry out any understanding that might have been arranged between defendant, his attorney, and the county attorney. Defendant's answers were frequently a simple "yes" or "no," but such responses are more usual than unusual in the case of a defendant entering a plea of guilty on arraignment. Whenever defendant failed to respond or indicated lack of understanding the court persisted until defendant gave a responsive answer. At the conclusion of the allocution the court announced:

"Well, the Court finds that the plea is voluntarily made with an understanding of the nature and consequences of the plea; that there is a factual basis for the plea; and accepts the plea of guilty as charged under K. S. A. 21-3504. . . ."

In subsequent hearings on defendant's motion to withdraw his plea, defendant testified that he had taken four separate medicines on the day he entered his plea and had undergone surgery on his jaw two days before. Defendant called a registered pharmacist who testified that the drugs taken by defendant could cause some adverse reaction such as dizziness and possibly even affect reasoning power, but the pharmacist further testified that a physician would not likely give such a prescription where adverse reactions were noted. Defendant's family doctor testified that he could have prescribed some medication for defendant during October 1971 but that if so it was not reflected by his office records.

The state called, as a witness, Maurice P. O'Keefe, Jr., of Atchison, who was defendant's counsel at the time his plea of guilty was entered. In this connection it should be noted that at sometime shortly after the state filed its motion to revoke probation, defendant changed counsel, and since that time has been represented by Robert D. Hecht and William E. Enright of the firm of Scott, Quinlan & Hecht of Topeka. Concerning defendant's appearance on the day of arraignment, Mr. O'Keefe testified:

". . . He appeared to know everything that was going on. He did give the appearance of being a little bit woozy or something or some shots to calm his nerves or something. He didn't give the outright bright appearance that you would otherwise give, but he seemed to know everything he was doing. He seemed like a crushed man."

In response to further interrogation, Mr. O'Keefe testified:

"There is no question in my mind but that Kenneth Dunham knew exactly what he was doing that morning."

Mr. O'Keefe also testified concerning plea bargaining with the county attorney; the result of which was that counts II and III of the information, in which defendant was charged with having sexual intercourse with two other minor girls, were dismissed when defendant changed his plea to guilty on count I.

Sally Dennis, an employee of the county treasurer, testified that on October 8, 1971 (the date of arraignment) the defendant appeared in the county treasurer's office to register a title application on a motor vehicle. She testified that she had seen defendant in the office before and that on this occasion he did not act any differently and appeared to be normal.

In his brief on appeal defendant attempts to shore up his argument by reference to statements made by the trial court during one of the subsequent hearings to the effect that the court stated it was "harassed with some doubt" and that defendant "was in a bit of a state of shock." The statements referred to are taken out of context from a comment made by the court during a lengthy colloquy between court and counsel concerning defendant's situation. The colloquy took place at the sentencing hearing on December 16, 1971, with Mr. Hecht, Mr. Enright, the county attorney and his deputy present. To put the matter in proper perspective we quote the court's entire comment as reproduced in the record:

"Well, the Court was harassed with some doubt and that's the reason that we went through this so carefully. As a matter of fact, when counsel indicated that he was going to enter a plea of guilty, for him, then in order to establish some basis for the plea, I started going into the regular rigmarole of finding out the circumstances of the offense and so on, and he started denying it, and I told him quite frankly that I wasn't going to accept the plea if he wasn't guilty of it. So then he went through all the details with me and satisfied the Court that he was guilty of it, and there was a finding of guilty on that basis. I am not saying that he presented the appearance of a man on that occasion of the brightest individual on earth, but more the appearance of a man that was in a bit of a state of shock, but this isn't unusual when a defendant finally finds out that he is at the point where he has to face the music. They frequently present that appearance. . . ."

From a reading of the entire text of the court's comment it is evident that the court was not indicating that defendant appeared to be in the type of shock which might stem from injury or drugs, but rather that defendant appeared to take on the state of mind that a guilty party usually assumes upon facing the consequences of his criminal actions. We believe the court's comment considered in toto

evidences a conscientious consideration on the part of the court rather than doubt of defendant's capacity as suggested by defendant in his brief.

K. S. A. 1972 Supp. 22-3210 of the new code of criminal procedure sets the standards to be observed by courts in accepting pleas of guilty or *nolo contendere* in a felony case. The procedure set out is in compliance with and embodies the requirements of due process as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U. S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709. (See *Widener v. State*, 210 Kan. 234, 499 P. 2d 1123.) As we have previously pointed out, the trial court, before accepting defendant's plea, took great care that the requirements of 22-3210 were met as evidenced by the extended colloquy on allocution which is reproduced in the record. The court expressly found there was a factual basis for the plea.

This brings us to consideration of the trial court's order overruling defendant's motion to withdraw his plea. Withdrawal of a plea of guilty is now governed by the provisions of 22-3210 (7) which reads:

"(7) A plea of guilty or *nolo contendere,* for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

The provisions of subsection (7) leaves withdrawal of a plea of guilty prior to sentencing within the court's discretion. After sentencing, it appears, that a defendant may be permitted to withdraw his plea only if to do so would prevent manifest injustice. In the instant case it appears that defendant filed his motion to withdraw his plea prior to the imposition of sentence which had been suspended when the plea was entered. As best, we can ascertain from the record a hearing was had and evidence adduced on defendant's motion to withdraw simultaneously with the sentencing hearing. In any event, we shall treat the issue as one to be resolved within the trial court's sound discretion which is in line with the holding in our numerous cases dealing with the subject. (See *Addington v. State*, 198 Kan. 228, 424 P. 2d 871; and *State v. Nichols*, 167 Kan. 565, 207 P. 2d 469, and cases cited therein.)

While our decision in *State v. Byrd*, 203 Kan. 45, 453 P. 2d 22 (April 1969) preceded the effective date of 22-3210, we believe what was said and held therein determines the issue here. In *Byrd*

defendant appealed from an order denying his motion to withdraw his plea. As in the instant case, Byrd contended his plea was involuntary although on different grounds. Byrd contended his plea was coerced by the county attorney's threat of invoking the Habitual Criminal Act as an alternative to a plea of guilty. In *Byrd* we said:

". . . It is well settled that once a plea of guilty has been entered by defendant and sentence pronounced, the question of whether or not he can later withdraw his plea is directed to the sound discretion of the trial court and the trial court's judgment will not be disturbed on appeal unless the defendant shows an abuse of such discretion. . . .

"An analysis of our decisions indicates permission to withdraw a plea depends upon the facts and circumstances of each case. Generally it is a question of fact for the trial court to determine if the plea was voluntarily and understandingly made. The issue to be determined is whether the ends of justice will be served by permitting the withdrawal. . . ." (p. 52.)

In the instant case the question whether defendant's plea was voluntarily and understandingly made has been thoroughly investigated on allocution and in the several subsequent hearings. Defendant was represented by experienced, competent counsel at all proceedings. Much evidence was adduced, some of which may be said to have been in conflict. Whether good cause is shown is a factual issue to be determined by the trial court. The issues were fully considered and a factual determination was made by the trial court in overruling defendant's motion to withdraw his plea. There is no showing made of an abuse of discretion in this regard.

For his second point of error with regard to the court's acceptance of his plea of guilty, defendant claims the record fails to establish that the alleged victim of the offense was defendant's ward as defined by K. S. A. 1972 Supp. 21-3504:

"Indecent liberties with a ward is either of the following acts when committed with a child under the age of sixteen (16) years by any guardian, proprietor or employee of any foster home, orphanage, or other public or private institution for the care and custody of minor children, to whose charge such child has been committed or entrusted by any court, probation officer, department of social welfare or *other agency* acting under color of law:" (Emphasis supplied.)

Defendant contends Cindy Farris, the victim of the offense charged, was not his ward but was in fact merely a guest. The evidence pertaining to this question was adduced on allocution and in subsequent hearings. Defendant admitted that he was a

476

proprietor of a foster home in Atchison County in which Cindy was in his custody, but he claims she had not been placed there by the department of social welfare; and that such care and custody does not fall within the provisions of 21-3504. It was brought out in evidence adduced at subsequent hearings that Cindy had been placed by court order in the "Cookson Hills" home in Arkansas. Through Cookson Hills arrangements were made to place Cindy in the custody of Mr. and Mrs. Dunham in their foster home to be with her sisters who were residents there. No claim was made that Cookson Hills was operating without proper authority. Thus, it appears that Cindy was placed in the custody of defendant, a proprietor of a foster home, by an agency acting under color of law.

A long standing rule in this jurisdiction is that a voluntary plea of guilty admits all well-pleaded facts alleged in the information. (*Hughes v. State,* 206 Kan. 515, 479 P. 2d 850.) There can be no review of the sufficiency of the evidence in a proceeding under 60-1507 (*McCarther v. State,* 211 Kan. 152, 505 P. 2d 773.) The requirement of K. S. A. 1972 Supp. 22-3210(4) is that the court be satisfied there is a factual basis for the plea. The court was satisfied in this regard after allocution. The trial court then had the opportunity to review the matter in the light of the evidence adduced at the several subsequent hearings. We find no basis in the record to conclude the trial court erred in accepting defendant's plea in the first instance or abused its discretion in overruling defendant's subsequent motion to withdraw his plea.

Defendant's final contention with respect to the trial court's acceptance of his plea of guilty is that he had ineffective counsel at the time that he entered his plea. Defendant asserts that his counsel was not aware of the elements of the crime charged and that he knew defendant was under medication and should have sought a continuance of arraignment. The record refutes the contentions of defendant in this regard. Mr. O'Keefe is an attorney of twenty years experience and has served as county attorney of Atchison county for four years. Mr. O'Keefe testified that he consulted with defendant on several occasions and discussed with him the type of case the state had, how it would be presented, and what evidence the state would likely submit. There is no evidence that Mr. O'Keefe knew defendant was under medication and although he testified "defendant appeared a little woozy" he further testified "there is no question in my mind that Kenneth Dunham knew exactly what

he was doing." We have previously mentioned Mr. O'Keefe's plea bargaining with the county attorney that resulted in dismissal of the serious charges in counts II and III.

The question of competency of counsel has been before this court in many proceedings under 60-1507. We have consistently followed the basic rule that the adequacy of representation by an attorney is to be measured by the sum total of representation. In the recent case of *Widener v. State*, supra, we held:

"In measuring the adequacy and effectiveness of counsel provided for an accused as guaranteed by the constitution of the United States adequacy and effectiveness must be gauged by the actual representation afforded the accused.

"To be a denial of an accused's constitutional rights it must clearly appear that the representation of the accused by his counsel was wholly ineffective and inadequate." (Syl. ¶¶ 1, 2.)

The record discloses that defendant was effectively and competently represented.

We turn next to defendant's contention that his probation was improperly revoked. Defendant advances two arguments; first, that he did not receive proper notice and, second, that a case for revocation was not made out.

Before discussing defendant's arguments it should be pointed out that after accepting defendant's plea on Oct. 8, 1971, the trial court suspended the imposition of sentence and placed defendant under supervision of the State Board of Probation and Parole, subject to the statutory conditions set out in K. S. A. 1972 Supp. 21-4610. The court also imposed the special condition that defendant commit himself to the care and treatment of the Veterans Administration Hospital in Kansas City, Missouri.

On October 21, 1971, the state filed a motion for revocation. The trail court issued a bench warrant for defendant's arrest. The motion for revocation was set for hearing on October 28, 1971, and the motion was served on defendant by mail. Defendant did not appear on October 28, but on November 2 a request for a hearing on the motion to revoke was filed by defendant's new counsel Mr. Hecht. A new hearing was scheduled for November 18, 1971, when defendant appeared with counsel. Despite his appearance, defendant complains of service by mail when the statute K. S. A. 1972 Supp. 22-3716 (1) provides:

". . . Such notice shall be personally served upon the defendant. . . ."

Defendant appeared with counsel at a hearing which had been requested by counsel. The record discloses no objection to proceeding with the hearing or any request for a continuance. Defendant's contention is fully answered in our opinion in *State v. Nelson*, 196 Kan. 592, 412 P. 2d 1018, wherein we held:

"Where a probationer is present and represented by counsel at a revocation hearing, and where he neither requests a continuance because of insufficient notice nor objects to proceeding with the hearing, he is deemed to have waived any question as to the sufficiency of notice and is in no position to complain of deficiencies therein." (Syl. ¶ 3.)

Concerning defendant's contention there was no evidence presented to show he had violated any condition of his probation, the record does not support defendant's position. There is evidence that defendant misled the court as to the state of his health. The record indicates that the court was led to believe that defendant was infected with tuberculosis and was to be treated as an inpatient at the Veterans Hospital. In this connection the record reflects this colloquy on allocution:

"THE COURT: What's the state of your health generally?
"DEFENDANT: Fair.
"MR. O'KEEFE: He is supposed—another thing, your Honor. He has T. B.
"THE COURT: How long?
"DEFENDANT: They just now put me up for a year.
"THE COURT: You are going to be in the V. A. Hospital for a year?
"MR. O'KEEFE: Well, he was on an out-patient basis, I think, weren't you?
"DEFENDANT: They let me out for this special thing. I have to go back.
"THE COURT: When did they discover you had tuberculosis?
"DEFENDANT: About the 24th.
"THE COURT: Of September?
"DEFENDANT: I was having pains and lost a lot of weight. Twenty-fourth of last month.
"THE COURT: September?
"DEFENDANT: Yes, sir."

At the hearing in was developed that defendant had actually been released from the hospital two days prior to his appearance on October 8. In this connection the court commented:

". . . when this man appeared before this Court on October 8, it was on the representation that he was tubercular and needed hospitalization and also psychiatric care. But the Court was primarily concerned about the tubercular condition, and then it turned out that in actuality that he had been released from the hospital for that condition two days before he appeared here, and the Court quite frankly thought that it had been taken advantage of. . . ."

Misrepresentations have been held to be a basis for revocation. (*United States v. Ecton*, 454 F. 2d 464 [9th Cir. 1972].) Moreover, as previously pointed out, hospitalization was a condition of defendant's probation. There was also some evidence introduced that defendant had missed two meetings with his parole officer which constituted violations of a condition of his probation.

Proceedings for the revocation of probation are now governed by the provisions of K. S. A. 1972 Supp. 22-3716. Subsection (2) provides in pertinent part that the hearing shall be in open court, the state shall have the burden of establishing the violation, the defendant shall have the right to be represented by counsel and to present the testimony of witnesses and other evidence in his behalf.

Throughout all of the proceedings herein defendant was represented by qualified counsel. Defendant was afforded the opportunity and did present the testimony of numerous witnesses. The question whether the state sustained the burden of establishing a violation was for determination by the trial court. As we have indicated, there was evidence submitted by the state tending to show violations of two of the conditions of probation. Since there was evidence to support the judgment of the trial court it cannot be disturbed.

We find no error in the trial court's refusal to vacate defendant's plea of guilty, in its overruling of defendant's motion to withdraw his plea, nor in its order revoking probation.

The judgment is affirmed.