GUARDIANSHIP OF LINDA.

Berkshire.   January 5, 1988. — March 7, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Mental Health. Incompetent Person,* Consent to medical treatment, Right to
   refuse medical treatment. *Guardian,* Incompetent person, Consent to
   medical treatment.

The substituted judgment inquiry to determine what an incompetent individ-
   ual would do if competent is a judicial function distinct from any medical
   determination of such an individual's "best interests." [785]
A probate judge, in appointing for an incompetent person a guardian with au-
   thority to permit administration of antipsychotic drugs for only so long
   as the ward voluntarily accepted them, was correct, in the circumstances,
   in declining to approve the Department of Mental Health's request for
   a prospective order allowing the nonemergency fo cible injection of such
   drugs should the ward refuse in the future to accept the antipsychotic
   drugs voluntarily. [785-787]

PETITION filed in the Berkshire Division of the Probate and
Family Court Department on May 22, 1986.

The case was heard by *Andrea F. Nuciforo,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Marilyn J. Schmidt,* Special Assistant Attorney General, for
Department of Mental Health.

*Alan J. Righi* for the ward.

HENNESSEY, C.J. The Department of Mental Health (depart-
ment) filed a petition in the Probate Court under G. L. c. 201,
§ 6 (1986 ed.), seeking a guardianship of "Linda" (the ward),
with authority in the guardian to permit the administration of
antipsychotic drugs.[1] At the time this action was commenced,

---

[1] Prolixin Decanoate and Mellaril. " 'Antipsychotic' drugs are 'medica-
tions such as Thorazine, Mellaril, Prolixin, and Haldol that are used in
treating psychoses, particularly schizophrenia.' " *Rogers* v. *Commissioner*

the ward voluntarily was accepting such drugs.[2] The Probate Court judge ruled that, by reason of mental illness, the ward was unable to make an informed judgment as to treatment. He appointed a guardian, with authority to permit the administration of antipsychotic drugs for only so long as the ward voluntarily accepted them. He expressly ruled that the department could not at that time obtain an order to compel treatment of the ward with antipsychotic drugs if she later refused to take them. The judge contemplated that, if at some future time the ward refused to accept antipsychotic drugs, an order compelling their forcible administration would issue only after a hearing based on current facts as to the ward's competence, capacity to make an informed treatment decision, and substituted judgment. The department appeals from that part of the order which conditions the guardian's authority to administer antipsychotic drugs on the ward's voluntary acceptance thereof, contending that the judge abused his discretion in imposing this condition. We reject this contention and affirm the order of the Probate Court.

At the outset, we note that the order has expired. We understand, however, that the department has obtained an interim extension of the order and is seeking a permanent extension. In any event, the issue presented is one that is capable of repetition, yet evading review, so we address its merits. See, e.g., *Commonwealth* v. *Yameen, ante* 331, 333 (1987), and cases cited.

The parties do not challenge the probate judge's findings of fact. The ward suffers from schizophrenia. In the past, she has experienced delusions, hallucinations, and mild paranoia,

---

*of the Dep't of Mental Health,* 390 Mass. 489, 490 n.3 (1983), quoting *Rogers* v. *Okin,* 634 F.2d 650, 653 n.1 (1st Cir. 1980), vacated and remanded sub nom. *Mills* v. *Rogers,* 457 U.S. 291 (1982).

[2] The department was correct to seek an adjudication of incompetence and substituted judgment although the ward voluntarily was accepting treatment with antipsychotic drugs. "[B]ecause incompetent persons cannot meaningfully consent to medical treatment, a substituted judgment by a judge should be undertaken for the incompetent patient even if the patient accepts the medical treatment." *Rogers* v. *Commissioner of the Dep't of Mental Health, supra* at 500 n.14.

and she has been hospitalized repeatedly. Presently, she voluntarily is accepting treatment with antipsychotic drugs, which allows her to live outside an institutional setting. She does not understand the nature of these drugs; she accepts them because she believes they help her to sleep and calm her nerves. Anticipating that at some future time the ward might change her mind and refuse to accept treatment, the department requested that, "[w]hile the ward is now accepting anti-psychotic medication, an order issue now, but not to be effective until sometime in the future, compelling forcible medication in case of her later refusal." In effect, the department sought a "pocket" order, directed not to the present circumstances but to a future contingency, with which it could override the ward's expressed desire should she at some point refuse to accept antipsychotic drugs.

Much of the department's argument is directed to demonstrating that the condition imposed by the judge disserves the ward's "best interests," and implies that the medical profession is institutionally superior to the courts in making such determinations. We will not join this debate, as it is irrelevant to the issue of the ward's substituted judgment. "A substituted-judgment decision is distinct from a decision by doctors as to what is medically in the 'best interests' of the patient. . . . '[T]he goal is to determine with as much accuracy as possible the wants and needs of the individual involved.'" (Citations omitted.) *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 500 (1983). The inquiry, then, is directed to discovering "what the incompetent individual would do if competent . . .", and is a "subjective rather than an objective determination." *Guardianship of Roe*, 383 Mass. 415, 435, 444 (1981). Of course, the ward's best interests are not irrelevant to this determination, but they are relevant only to the extent that the individual, if competent, would weigh them in deciding whether to accept treatment. We reemphasize that the substituted judgment inquiry is not a medical, but a judicial, function. *Rogers, supra* at 497-500. *Roe, supra* at 433-435.

This court has identified a number of considerations which are relevant to the substituted judgment inquiry, while "caution-

ing that they are not exclusive, recognizing that certain of them may not exist in all cases and declining to establish their relative weights in any individual case. They are: (1) *the ward's expressed preferences regarding treatment*; (2) his religious beliefs; (3) the impact upon the ward's family; (4) the probability of adverse side effects; (5) the consequences if treatment is refused; and (6) the prognosis with treatment" (emphasis added). *Roe, supra* at 444. "Even if the ward lacks capacity to make treatment decisions, his stated preference is entitled to serious consideration as a factor in the substituted judgment determination." *Id.* at 445.

The judge made his substituted judgment decision on the basis of the facts and circumstances existing at that time, among them that the ward had, in effect, "expressed a preference" for treatment by voluntarily accepting antipsychotic drugs. The department would have the judge consider not only the existing circumstances, but also a future contingency, i.e., the possibility of the ward's subsequent refusal to continue taking antipsychotic drugs, and issue an order that would take effect upon the occurrence of that contingency. In effect, the department asked the judge to hypothesize a change in circumstances, and to rule categorically that such a change of circumstances would not alter his conclusion as to the ward's substituted judgment. We think that, in the circumstances of this case, the judge appropriately acted within his discretion in denying this request for a "prospective" order. See *Roe, supra* at 432 & n.8 (where the "guardian did *not* propose to authorize forcible administration of antipsychotic drugs immediately but rather sought contingent authority to administer such drugs if certain anticipated events took place" [emphasis in original; footnote omitted], a judge's decision granting such authority was "premature" and erroneous). In so far as his decision was predicated in part on the ward's expressed preference as to treatment, the judge was warranted in limiting the guardian's authority forcibly to override the ward's wishes. Should the ward change her mind and refuse to accept continued treatment with antipsychotic drugs, there might well be reason to believe that other circumstances relevant to the substituted judgment decision also had changed.

"A premature decision will needlessly burden all involved and will make any substituted judgment determination less accurate. The determination will become more precise as it approaches the time at which it will be implemented because, for example, the ward's choice might change as [her] medical condition (and other circumstances) change." *Id.* at 432, n.8.

"We can identify few legitimate medical procedures which are more intrusive than the forcible injection of antipsychotic medication," *Roe, supra* at 436, and we do not think that the inconvenience of obtaining prior judicial approval before forcibly administering such drugs to an incompetent ward is too high a price to pay for the protection of the ward's right to privacy and bodily integrity. In this regard, we note that the requirement of prior judicial approval applies only to nonemergency circumstances. In situations where the patient "poses an imminent threat of harm to himself or others," and there is no less intrusive alternative to antipsychotic drugs, or when necessary to prevent the "immediate, substantial, and irreversible deterioration of a serious mental illness," *Rogers, supra* at 510-511, the State may invoke its police or parens patriae powers, respectively, to treat the patient by forcible injection of antipsychotic drugs, over the patient's objections, and without prior judicial approval. *Id.* But "court approval is mandatory before forcible medication of an incompetent patient with [antipsychotic] drugs in a nonemergency situation can take place." *Id.* at 501-502. The judge below was within his discretion in declining to approve prospectively the forcible injection of the ward with antipsychotic drugs.

We emphasize that the conclusions we reach do not extend beyond the facts of this case. It is possible that in another case the evidence could be such that the judge might appropriately determine prospectively that antipsychotic drugs might be administered even if the ward refused the treatment. In the case before us, there was no error in the order that, if the ward refuses such drugs, none should be administered, absent emergency, prior to judicial review and determination of her substituted judgment in the changed circumstances.

*Order affirmed.*