RUTH M. PISANI, administratrix, *vs.* TRAVELERS INSURANCE COMPANY & another.[1] No. 89-P-792. October 5, 1990. *Insurance*, Motor vehicle insurance, Underinsured motorist, Coverage. *Words*, "Ward."

Having quarreled with her mother, Kerry Pisani, age sixteen, left home and moved in with the family of her best friend, Victoria Johnson. There she resided for six weeks until July 25, 1986, when she was killed in an accident while a passenger in Victoria Johnson's car. Ruth M. Pisani, as the administratrix of her daughter Kerry's estate, brought an action seeking to recover damages under the underinsured motorist coverage in automobile insurance policies purchased by Victoria's parents, Dorothy Johnson and Ervin Johnson.[2] The theory of the action was that Kerry was a "de facto ward" of the Johnson family and, as such, a member of the Johnson household. A judge of the Superior Court concluded that Kerry was not a ward of the elder Johnsons and allowed a motion for summary judgment in favor of the insurance company. From the ensuing judgment, Ruth Pisani has appealed.

Ruth Pisani had telephoned Dorothy Johnson to acknowledge that she had learned Kerry was staying with the Johnsons. In the course of that conversation, Dorothy Johnson said she would "keep an eye on Kerry." The account of that conversation appears in an affidavit filed by the plaintiff in support of her motion for summary judgment and, for purposes of considering the case, we take the facts alleged in that affidavit as true. During her sojurn with the Johnsons, Kerry paid to them $25 per week for board.

Under the uninsured or underinsured auto coverage which appears as Part 3 of the standard Massachusetts automobile insurance policy, the insurer agrees "to pay damages to or for (1) You [the named insured], or any household member." The term "household member" is defined in the "Definitions" section of the policy as "anyone living in your [i.e., that of the named insured] household who is related to you by blood, marriage, or adoption. This includes wards or foster children."

In common signification, a ward is someone under protection because unable to take care of herself or himself. Paired with a ward, as the term is commonly used, is a protector, be that a guardian, conservator or court. By way of example, "ward" is used in the General Laws in connection with the appointment of guardians of minors (G. L. c. 201, § 2), appointment of testamentary guardians (G. L. c. 201, § 3), guardianship of a spendthrift (G. L. c. 201, § 11), termination of the guardianship of a mentally ill or retarded person or spendthrift (G. L. c. 201, § 13), appointment of temporary guardians (G. L. c. 201, § 14), appointment of conservators (G. L. c. 201, § 16), and discharge of a conservator (G. L.

---

[1]Metropolitan Property & Liability Insurance Company.

[2]Metropolitan Property & Liability Insurance Company insured a car owned by Dorothy Johnson. Travelers Insurance Company insured a car owned by Ervin Johnson.

c. 201, § 18). Similar conjunctions of "ward" with legally created super-
visory capacity appear in the cases, e.g., *Jones* v. *Maguire*, 221 Mass. 315,
316 (1915); *Russell* v. *Lovell*, 362 Mass. 794 (1973); *Guardianship of
Roe*, 383 Mass. 415, 417 (1981); *Guardianship of Linda*, 401 Mass. 783
(1988); *In the Matter of Schenck*, 12 Mass. App. Ct. 532 (1981); and
*New England Merchants Natl. Bank* v. *Spillane*, 14 Mass. App. Ct. 685,
694 (1982).

Dictionary definitions of "ward" describe a minor or an incompetent
person placed under protection by order of a court, at least in a legal con-
text, and the context in which we are examining the word is in a document
designed to prescribe legal rights and obligations.[3] See American Heritage
Dict. 1363 (2d College ed. 1982); Webster's Third New Intl. Dictionary
2575 (1971); Oxford English Dictionary 3684-3685 (Compact ed. 1971).
That the legal sense of "ward" is intended also appears from the very sen-
tence in which the word appears. That sentence, which reads, "This in-
cludes wards or foster children," follows "anyone living in your household
who is related to you by blood, marriage or adoption." The word "in-
cludes" relates back to the words "by blood, marriage or adoption." The
latter words connote legal bonds rather than the informal status held by
Kerry as a sojourner in the Johnson house. Kerry was under no obligation
to remain with the Johnsons or to obey any direction of Mr. or Mrs. John-
son, except such obedience as a child might — one dares to hope — pay
out of respect for an elder. Certainly the Johnsons had no authority or
responsibility respecting the education or medical care of Kerry.

Decisions from other courts which have explored the meaning of "ward"
have emphasized that the status comes about through court or State ac-
tion. See, e.g., *In re Jennings*, 68 Ill.2d 125, 132-133 (1977); *State* v. *Dun-
ham*, 213 Kan. 469, 475-476 (1973); *Hartman* v. *Insurance Co. of N.
America*, 106 Mich. App. 731, 738-740 (1981) (construing insurance pol-
icy language similar to that before us — an incompetent had been placed
in a private facility by State action and was held to be a ward of the
facility); *Grover* v. *Martone*, 127 Misc.2d 40, 41 (N.Y. Sup. Ct. 1985).
We do not discount the possibility that the status of a ward or foster child
could be achieved without formal judicial or governmental order. Such was
the case in *Busby* v. *Ranger Ins. Co.*, 708 S.W.2d 795, 796 (Mo. Ct. App.
1986), in which a child had been taken in at the age of thirteen days by
the Barebo family, was baptized Thomas Barebo, enrolled in school with
that name, and grew up as a member of the Barebo family. In those cir-
cumstances, for purposes of an insurance policy provision also resembling
that which we are to construe, the court held Thomas Barebo to be a "de
facto foster child." No similar long-term commitment to the authority or

---

[3]Uses of "ward" in other than a legal context also have overtones of protection, as
in "hospital ward," "ward" meaning the act of watching, or "warder," meaning one
who guards.

guidance of the Johnson parents or identification with the Johnson family occured here.

On the uncontested facts, Kerry was not a ward of the senior Johnsons and not within the scope of the underinsured motorist coverage. Summary judgment for the insurance companies was rightly allowed.

*Judgment affirmed.*

*Stephen J. Fallon* for the plaintiff.

*Laurie J. Condos* for Metropolitan Property & Liability Insurance Company.

*Thomas M. Dickinson* for Travelers Insurance Company.