Hillman, J.
The plaintiff brings this action seeking a declaration as to whether the defendant, the Commerce Insurance Company (Commerce) is obligated to pay benefits to the estate of Margaret H. Harvard under a Standard Automobile Policy (the Policy). This insurance policy was issued to a woman with whom Ms. Harvard lived, Jacqueline O’Grady. The plaintiff claims that Ms. Harvard was a “household member” in the home of Ms. O’Grady. Specifically the plaintiff claims that Ms. Harvard was a ward of Ms. O’Grady’s, and as such, qualified for coverage as a household member under the Policy. Both parties have moved for summary judgment. For the reasons stated below this court grants summary judgment for the plaintiff.
BACKGROUND
On June 6, 1994 Ms. Harvard was killed in an automobile accident. At the time of her death she had been living for two years in a Medicaid-funded, shared living program, called the Adult Family Care Program ( the Program) and administered by Tri-Valley Elder Services, Inc. (Tri-Valley). Under the Program she lived in a private home which was located in Webster, Massachusetts. She lived in this private home with the homeowner, Ms. Jacqueline O’Grady. This living arrangement was memorialized in a three-party contract between Tri-Valley, Ms. Harvard, and Ms. O’Grady. According to her Plan of Care, which is referenced in the contract, Ms. Harvard is a person with mental retardation complicated by an anxiety disorder in addition to several medical problems.[2]
At the time of Ms. Harvard’s death, Ms. O’Grady was the named insured on the Policy issued by the defendant Commerce. Ms. Harvard was not named as an additional insured or as an additional operator under this policy. Part 12 of that 1994 policy contained the provision that the insurer “will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance . . . We will pay damages to or for . . . Any household member . . . while occupying an auto not owned by you ...” The “Definitions” section of that policy defined “household member” as “anyone living in your household who is related to you by blood, marriage or adoption. This includes wards, stepchildren or foster children.” The executor of the estate of Ms. Harvard has made a claim for benefits under the Policy and Commerce has denied that they are obligated to pay benefits.
The contract that memorialized Ms. Harvard’s living arrangements at Ms. O’Grady’s home detailed the responsibilities of Ms. O’Grady, who is called “the care giver” under the agreement, and Ms. Harvard, who is called “the participant,” towards each other and the household. Those terms, reproduced in their entirety, are as follows:
THE CARE GIVER AGREES TO PROVIDE
A room in their home which meets minimum requirements and is maintained at all times in a safe, warm, sanitary and comfortable condition.
Care for the participant as noted in the plan of care including additional care as needed in times of illness.
Integration into the host’s family life and social network.
A balanced nutritional diet.
An open atmosphere so the participant may maximize their personal independence and abilities.
Transportation to and from appointments and activities as requested by the participant or Adult Family Care Staff.
Financial and personal care records pertaining to the participant in the foster care notebook as needed.
A confidential atmosphere in which the participant’s personal life and medical needs are *51 not discussed with other persons except Adult Family Care Staff or other authorized personnel.
A certificate of insurance for homeowners insurance of adequate coverage for the host family and client.
Provide a back-up care giver in her name as (approved by Family Care nurse) for the times that host is working.
THE PARTICIPANT AGREES TO
Take part in family activities and household chores as far as his/her health permits.
Be a considerate member of the host family household.
Be as responsible for his/her health care needs and social needs as possible.
Cooperate with the care giver and others in carrying out the plan of care.
Promptly pay foster care financial obligations.
Fill out Medicaid and Social Security application and other forms (including getting all the supporting documents). Help will be given as needed by the care giver and/or foster care staff.
Treat the care giver’s family life confidential and not discuss personal matters with other persons except Adult Family Care Staff or other authorized persons.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17.
Both parties concede that the determination of whether or not Ms. Harvard’s estate is entitled to coverage under Ms. O’Grady’s automobile insurance policy hinges upon whether she was a “member" of Ms. O’Grady’s household as that term is used in the Policy. The Policy defines a “household member" as “anyone living in your household who is related to you by blood, marriage or adoption. This includes wards, step-children or foster children.” (Emphasis supplied.) The plaintiff urges the court to determine that Ms. Harvard was a “ward” of Ms. O’Grady as that term is used in the policy.
The defendant places great significance on the fact that any relationship between Ms. Harvard and Ms. O’Grady was not legally created. They point to the case of Pisani v. Travelers Ins. Co., 29 Mass.App.Ct. 964 (1990), which held that; “In common signification, a ward is someone under protection because (they are) unable to take care of herself or himself.[3] Paired with a ward, as the term is commonly used, is a protector, be that a guardian, conservator or court. By way of example, ‘ward’ is used in the General Laws in connection with the appointment of guardians of minors (G.L.c. 201, §2), appointment of testamentary guardians (G.L.c. 201, §3), guardianship of a spendthrift (G.L.c. 201, §11), termination of the guardianship of a mentally ill or retarded person or spendthrift (G.L.c. 201, §13), appointment of temporary guardians (G.L.c. 201, §14), appointment of conservators (G.L.c. 201, §16), and discharge of a conservator (G.L.c. 201, §18). Similar conjunctions of ‘ward’ with legally created supervisory capacity appear in the cases, e.g., Jones v. Maguire, 221 Mass. 315, 316 (1915); Russell v. Lovell, 362 Mass. 794 (1973); Guardianship of Roe, 383 Mass. 415, 417 (1981); Guardianship of Linda, 401 Mass. 783 (1988); In the Matter of Schenck, 12 Mass.App.Ct. 532 (1981); and New England Merchants Nat’l. Bank v. Spillane, 14 Mass.App.Ct. 685, 694 (1982).” Pisani, 29 Mass.App.Ct. at 964-965.
In Pisani, the Appeals Court noted that the above relationships were all legally created. The court also noted that its review of other jurisdictions “have emphasized that the status (as ward) comes about through court or State action. See, e.g., In re Jennings, 68 Ill.2d 125, 132-133, 368 N.E.2d 864, 868 (1977); State v. Dunham, 213 Kan. 469, 475-476, 517 P.2d 150, 155 (1973); Hartman v. Insurance Co. of N. America, 106 Mich. App. 731, 738-740, 308 N.W.2d 625, 628-630 (1981) (construing insurance policy language similar to this case); Grover v. Martone, 127 Misc.2d 40, 41, 485 N.Y.S.2d 191, 192 (N.Y. Sup. Ct. 1985).” Id. at 965. Nevertheless, the Appeals Court left open the question of whether the status of ward could be achieved without a court order. “We do not discount the possibility that the status of a ward or foster child could be achieved without formal judicial or governmental order.” Id.
Indeed, our Supreme Judicial Court has stated that, “We recognize, as have courts in other jurisdictions, that, because modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term ‘household member’ can have no precise or inflexible meaning . .. Analysis of the issue necessarily must proceed on a case-by-case basis with an evaluation and balancing of all relevant factors.” Vaiarella v. Hanover Insurance Company, 409 Mass. 523, 526-527 (1991). It is the opinion of this court that this is such a situation. The contract between Ms. Harvard, Ms. O’Grady, and TriValley sets forth a living arrangement in which Ms. O’Grady provided not only food and shelter for Ms. Harvard, but intangibles such as “Integration (of Ms. *52 Harvard) into the host’s family life and social network,” and “an open atmosphere so (that Ms. Harvard) may maximize (her) personal independence and abilities.” Ms. Harvard’s responsibilities under the agreement similarly revolved around the role of Ms. O’Grady as protector and Ms. Harvard as protectee or ward.
Whether created by court order or not, Ms. Harvard was under the protection ofMs. O’Grady and had been for at least two years. All of the elements of a relationship of protector and ward were present except for a formal designation of the relationship from a court of competent jurisdiction. The relationship that existed was created by a valid contract. That contract provided not only for the care and protection of Ms. Harvard and her integration into the O’Grady household, but also for continuity, stability, and longevity in that relationship. It is therefore the opinion of this court that Ms, Harvard was a “household member” as that term is used in the Policy by virtue of the fact that Ms. Harvard was a ward of Ms. O’Grady.
ORDER
It is therefore ORDERED that the plaintiffs motion for summary judgment is ALLOWED and the defendant’s motion is DENIED. This court makes a declaration that Ms. Harvard was a “household member” as that term is used in the 1994 Massachusetts Automobile Insurance Policy.

Ms. Harvard suffered from persistent back pain, arthritis and chronic pain following a bunionectomy.

For the purposes of this decision this court finds that Ms. Harvard was unable to fully look after herself and required the care and supervision of another. She required assistance with respect to administration of medication, personal decisions, psychological needs, and activities of daily living. This assumption is also made from the submissions of counsel and the fact that her living arrangements were paid for by Medicaid.