Bruce W. JOSEPH,
individually and as guardian *ad litem*
for Tanisha Nash,
*Appellant,*

*v.*

UTAH HOME FIRE
INSURANCE COMPANY,
*Respondent.*

(88-12-06794; CA A61888)

809 P2d 112

Mary Ellen Page Farr, Portland, argued the cause for appellant. With her on the briefs was Kell, Alterman & Runstein, Portland.

Jeffrey D. Eberhard, Portland, argued the cause for respondent. With him on the brief were Robert F. Smith and Smith & Freed, P.C., Portland.

BUTTLER, J.

Rossman, J., dissenting.

## BUTTLER, J.

Plaintiff sought a declaratory judgment that a member of his household is entitled to coverage under his automobile insurance policy. He appeals from a judgment declaring that there is no coverage. We affirm.

Plaintiff is the guardian *ad litem* for eight-year-old Tanisha Nash who, while riding her tricycle at the age of six, was hit by an uninsured motorist. She suffered extensive injuries and incurred substantial medical expenses. Tanisha is the daughter of Sheila Nash. Sheila and plaintiff, who is not Tanisha's father, have lived together as a family unit, although unmarried, since Tanisha was five months old. They also have a younger daughter of their own.

Plaintiff is the named insured under an automobile policy issued by defendant. The policy provides uninsured motorist (UM) coverage for the named insured and "family members," and Personal Injury Protection (PIP) coverage for the named insured and "relatives." On cross-motions for summary judgment, the trial court ruled that Tanisha does not come within the policy definition of insured and, therefore, is not entitled to coverage.

Plaintiff contends that both the Oregon Insurance Code and the policy's UM and PIP provisions afford coverage to Tanisha. We consider the Insurance Code first, because Oregon law requires that all automobile insurance policies provide both uninsured motorist (UM), ORS 742.504 (*formerly* ORS 743.792) and personal injury protection, ORS 742.520 (*formerly* ORS 743.800), and the policy may not provide less protection than that provided by statute. If the statute provides protection, it matters not whether the policy does.

Under ORS 742.504(2)(a)(A) (*formerly* ORS 743.792(2)(a)(A)), relating to UM protection, "insured" means:

"The named insured * * * and any person designated as named insured * * * and, while residents of the same household, the spouse of any such named insured and relatives of either; * * * if the named insured as stated in the policy is

other than an individual or husband and wife who are residents of the same household, the named insured shall be only a person so designated in the schedule * * *."

Because the named insured and Sheila, Tanisha's mother, are not husband and wife, the statute requires that Sheila be designated as a named insured in the policy schedule in order for Tanisha to be covered, unless Tanisha is a "relative" of the insured. "Relative" must be given its common meaning: related by blood or affinity, that is by marriage. *Webster's Third New International Dictionary* 1916 (unabridged 1971). The apparent purpose of that requirement is to avoid the kind of situation presented here. If the various persons living in the same household are not related by blood or affinity, the person for whom coverage is sought (or parent of that person) must be specifically named in the schedule in order to be covered. Neither Sheila nor Tanisha was designated a named insured in the policy; Sheila is not the insured's spouse, and, although Tanisha is a relative of Sheila, she is not a relative of the insured. Accordingly, neither of them is covered by the statute.[1]

■     The question then becomes whether the policy provides greater coverage than the statute mandates, although plaintiff does not contend that it does. The policy provides UM coverage to a "covered person," defined as "you *or any family member.*" (Emphasis in original.) As used in the policy, "you" and "your" refer to the named insured shown in the declarations and a spouse, if a resident of the same household. As noted, neither Tanisha nor Sheila is a named insured, and Sheila is not the insured's spouse. The policy also provides:

" 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

Plaintiff does not claim that Sheila, as the insured's domestic

---

[1] Understandably, the dissent does not even mention the statute, which does not provide coverage here. To have recognized that fact would render irrelevant most of the dissent's sociological interpretation of insurance contracts. Coverage for Tanisha was readily available by the simple act of naming her mother as an insured; it was not even necessary that Bruce Joseph and Sheila be married, although marriage would have solved the problem also and does not, as the dissent suggests, require "a judicial proclamation," 106 Or App at 510, a "formal stroke of a judge's pen" or "judicial ordainment." 106 Or App at 512. Neither plaintiff nor the dissent contends that the policy provides more coverage than does the statute.

associate, is covered,[2] yet he contends that her daughter *is* covered, because she is *his* "ward or foster child" because he considers her to be his daughter and feels responsible for her care; therefore, the apparent claim is, she is his *de facto* ward or foster child. The insured's feelings about Tanisha cannot change the meaning of the policy or the statute.

If plaintiff's analysis is correct, there would be no reason why Tanisha is not related to the insured by *de facto* adoption or why Sheila is not the insured's *de facto* spouse, in either of which cases Tanisha would be covered. Yet, neither plaintiff nor the dissent suggests that the policy goes that far. The obvious reason is that, in order to be a "family member" or a "relative," one must be related to the named insured by consanguinity or by a legal relationship, such as marriage or adoption, including that of guardian and ward or foster parent and foster child. All of the categories mentioned involve one or the other relationship. There is nothing ambiguous about the policy; it draws the same lines as the statute does.

■   Plaintiff makes the same arguments with respect to PIP coverage. ORS 742.520(1) (*formerly* ORS 743.800) mandates PIP protection in every automobile insurance policy to provide benefits to, among others, the insured and to "members of that person's family residing in the same household." The policy provides PIP coverage for any "injured person," defined as:

> "The named insured or any relative who sustains bodily injury * * * while a pedestrian, through being struck by a motor vehicle;
>
> " 'Relative' means a spouse and any other person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured."

Plaintiff does not contend that the policy provides less PIP coverage than the statute requires. He argues that Tanisha is covered if she qualifies as "a ward or foster child," and concludes that, because she is a *de facto* ward or foster child under

---

[2] Under the dissent's approach, Sheila would also be covered, although it is clear under both the statute and the policy that she is not.

the UM provisions, she is also covered by the PIP indorsement. We hold that there is no PIP coverage for the same reasons that we conclude that there is no UM coverage.

The dissent agrees with plaintiff that the policy is ambiguous,[3] because it does not define "ward" or "foster child." However, neither does it define "marriage" or "adoption," but there can be no contention that those terms are ambiguous. There is no ambiguity in the use of any of the terms; they are to be given their common meaning in the context in which they are used: Marriage and adoption require a legal relationship, and being a ward or foster child also requires a legal relationship. Plaintiff's approach, adopted by the dissent, would result in a fact question to determine coverage whenever a person claims to be a ward or foster child of a named insured or a member of the insured's "family." Neither plaintiff nor the dissent provides any guidance to resolve that question or state whether it is a question for the court or a jury. For how long must the person have lived with the insured? Is it enough for the insured to consider the injured person to be his child or at least his ward or foster child and to feel responsible for the child's care, as plaintiff suggests?

Both the statutes and this insurance policy have drawn the lines clearly to avoid that kind of uncertainty: The injured person must bear a specific legal relationship to the insured or be related by blood, unless the person or the person's parent is specifically named as an insured.

Affirmed.

**ROSSMAN, J.,** dissenting.

Because I do not believe that the creation of a "family" is dependent on the existence of a judicial proclamation to that effect, I reject the majority's tight-fisted approach to insurance coverage and respectfully dissent.

---

[3] The dissent, quite properly, does not expressly attempt to invoke the principle of construction that any ambiguity in an insurance policy is construed in favor of the insured. That principle does not apply when the question is whether a person qualifies as an insured under the policy. *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 SW2d 32 (Tex Civ App 1974); 44 CJS, "Insurance," 1226, § 308. However, the dissent seems to be saying that, because of the claimed ambiguity, the result should be that Tanisha comes within the term "ward." A rose by any other name would smell as sweet.

When Tanisha was struck by an uninsured motorist, Bruce Joseph filed a claim with his insurance company, because his policy stated that it covered his "family members." That term was not defined in the documents that he had been given.

This court's job is to interpret an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance. *Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 100, 585 P2d 657 (1978). It is a simple, *plain talk* standard. In applying that standard to the term "family member," we look at its common, generally shared meaning, as seen through the eyes of the ordinary person who is seeking insurance for the protection of his or her family. "Family" is commonly defined as

> "the basic biosocial unit in society having as its nucleus two or more adults living together and cooperating in the care or rearing of their own or adopted children." *Webster's Third New International Dictionary* 821 (1976).

While there are children in the home, family members typically live together as economically interdependent individuals, sharing a household and a system of emotional support and caring. Members generally enjoy a life-long commitment to contributing to, and being cared for by, others in the family unit.[1]

Having resolved what a "family" is, the next task is to examine the factual record in this case and determine whether Tanisha is a "member" of such a unit. She has been raised, jointly, by Bruce Joseph and Sheila Nash, who have lived together continuously almost since Tanisha's birth. Their household includes Tanisha's little sister, who is the biological daughter of Bruce and Sheila. Tanisha knows no father other

---

[1] The Oregon legislature has already acknowledged the existence of non-formalized families and the central role—both economic and emotional—that a non-biological parent plays in a child's life. For example, workers' compensation survivor's benefits are provided to unmarried individuals who have "cohabited in this state as husband and wife for over one year prior to the date of an accidental injury received by one or the other as a subject worker, and children are living as a result of that relation[ship] * * *." ORS 656.226. Also, ORS 109.119(1) provides the means for an individual to gain certain rights when a "child-parent" relationship has been established, although no legal relationship exists.

than Bruce, and is actually unaware that she is not his biological daughter. Bruce provides for her economically and emotionally. The practical reality of their life together is that, every day since her infancy, he has functioned as her father. Their bond is not by blood, but by an ongoing relationship of caring and support. To me, these facts very clearly spell out a "family" situation, and Tanisha is a "member" of that family.

After Bruce filed his claim, the insurance company sent him *its* definition of "family member."[2] Under the policy definition, Tanisha may be considered a family member only if she is Bruce's "ward or foster child." Those terms are not defined in the policy. Nonetheless, it is defendant's contention that, given Tanisha's biological deficit, the only way that she can be covered is to establish that her familial membership is a product of judicial ordainment. In essence, defendant argues that, absent the formal stroke of a judge's pen at some point in the past, plaintiff loses this case.

Our only other task, then, is to decide whether Tanisha qualifies as a "ward" or "foster child" within the meaning of the policy. In determining the definition of "ward," we remain governed by the common, ordinary understanding of that term's meaning. For most people, there are many different kinds of wards—from maternity wards, political wards and wards of the court, to just plain old wards and charges. The term encompasses and lends itself to many practical or *de facto* definitions, as well as to a legal or *de jure* definition.[3]

Other, more progressive jurisdictions have considered the terms "ward and foster child" and have decided that children like Tanisha come within their definitions. For example, in *Brokenbaugh v. New Jersey Mfrs. Ins. Co.*, 158 NJ Super 424, 386 A2d 433 (App Div 1978), the court considered a family in which a young woman (the plaintiff) had resided

---

[2] While this fact would have provided support for a *reformation* of the contract between Bruce and the insurance company, that remedy was not sought in this proceeding.

[3] I respond collectively to the majority's footnotes as follows: (1) As a *de facto* ward, Tanisha would qualify as a "relative" of the insured, ORS 742.502(2)(a)(A); (2) because she is covered under both the policy and the statute, it is unnecessary to decide whether the policy provides "more" coverage; (3) Shiela would not be covered under Bruce's policy, because a "spouse" is commonly understood to be an individual who has gone through a marriage ceremony, and Shiela has not.

with her mother and her mother's male companion (the named insured) from age two until she was four and one-half years old. The plaintiff had at that point gone to live with her grandmother, but the named insured had contributed weekly to her support. The mother continued to live with the insured for the next 20 years, having three children with him, but never marrying. When the plaintiff was 17, she returned to live with them, and for the next three years the named insured provided her food, shelter and medical care. When the plaintiff was injured in an accident, the court held that she came within the *de facto* definition of "ward or foster child" and was therefore entitled to coverage under the named insured's policy. The court made that determination on the basis of the length of the plaintiff's familial relationship with the named insured, the plaintiff's economic dependence on him and his longstanding performance of parental duties.

In *James by Robertson v. Allstate Ins. Co.*, 201 NJ Super 299, 493 A2d 28 (App Div 1985), a woman and her male companion, who were not married, had raised each others' children and had functioned as a blended family for four years. When one of the woman's children was injured by an uninsured motorist, her companion (the named insured) filed a claim under his insurance policy. The court held that, although the child's biological father was still an active part of the child's life, in that he made support payments and visited regularly, the child was a member of the named insured's "domestic circle." The court determined that the child would qualify for insurance coverage as a *de facto* stepchild if, on remand, it was determined that the child was financially dependent on the named insured. As the New Jersey courts have acknowledged, more than just *court-appointed* wards fall within the common sense definition of "ward or foster child."

People buy insurance to protect their families, and they do the best they can to make sense of the policies that insurance companies write. Given its multi-tiered abundance of legal talent and its respected fleet of well-trained underwriters, the insurance industry is clearly equipped to write a policy that excludes coverage for family members who do not have court documents pronouncing their status. Obviously, if the insurer had wanted to exclude *de facto* children of policy holders, it could have, simply by adding "court-appointed" to the terms "ward and foster child." Instead, it chose not to

define those terms. It now relies on the very ambiguity that it created. Surely, the citizens of Oregon deserve to be protected from such practices.

I remain steadfast in my belief that the *plain talk* standard, which is supposedly the legal test to be applied in this case, involves a recognition of the real world environment in which we live. Clearly, the non-formalized family is a reality today. It is as close as the family next door. And the children who live there, whether characterized as family members, wards, charges or *de facto* foster children, are entitled to protection regardless of their parents' marital status.

Therefore, I dissent.

Newman, Riggs and DeMuniz, JJ., join in this dissent.