Argued and submitted November 6, 1991, decision of the Court of Appeals and judgment of circuit court reversed and case remanded to circuit court for further proceedings June 18, 1992

Bruce W. JOSEPH,
individually and as guardian ad litem
for Tanisha Nash,
*Petitioner on Review,*

*v.*

UTAH HOME FIRE
INSURANCE COMPANY,
*Respondent on Review.*

(CC 88-12-06794; CA A61888; SC S38190)

835 P2d 885

Mary Ellen Page Farr, of Kell, Alterman & Runstein, Portland, argued the cause and filed the petition for petitioner on review.

Jeffrey D. Eberhard, of Smith, Freed, Heald & Chock, P.C., Portland, argued the cause and filed the responses to the petition for respondent on review. With him on the responses was M. Robert F. Smith.

Phil Goldsmith and Dean Heiling, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Melinda S. Eden, Portland, and D. Dennis Waldrop, Eugene, filed a brief on behalf of *amicus curiae* Oregon Lawyers for Children.

GRABER, J.

## GRABER, J.

■ The issue in this case is whether a child reared by plaintiff as his own child, although not related to him by blood, marriage, or formal adoption, is entitled to coverage under plaintiff's automobile insurance policy. Plaintiff sought a declaratory judgment that the policy covers the child. The trial court held that the policy does not cover the child, and the Court of Appeals affirmed. *Joseph v. Utah Home Fire Ins. Co.*, 106 Or App 505, 809 P2d 112 (1991). We conclude that the policy provides coverage, because it covers plaintiff's "foster child[ren]" and the child is plaintiff's "foster child" within the meaning of the policy. Accordingly, we reverse.

The facts are undisputed. On July 27, 1987, a car driven by an uninsured motorist struck six-year-old Tanisha, who was riding her tricycle outside her home. The car dragged Tanisha for some distance, seriously injuring her. At the time that she was injured, Tanisha lived with her mother, Sheila, and plaintiff in the same household. Along with Sheila, plaintiff has reared Tanisha from the time that she was five months old. He is not her biological father but is the only "father" that Tanisha has ever known.[1] Although plaintiff and Sheila had cohabited for several years and have a daughter together, they were not married.

Before the accident, plaintiff had obtained an automobile insurance policy from defendant. The policy contained Uninsured Motorist Coverage (UM) and Personal Injury Protection (PIP). After Tanisha was hurt, plaintiff filed a claim with defendant for UM and PIP coverage, which defendant denied. Plaintiff then brought this action, on his own behalf and as guardian *ad litem* for Tanisha, seeking a declaration that his policy provided Tanisha with both UM and PIP coverage. In the alternative, plaintiff asserted that Tanisha is entitled to UM and PIP benefits under Oregon's Insurance Code, which mandates that motor vehicle liability policies must provide those benefits.[2] Plaintiff filed a motion

---

[1] Tanisha's biological father has not seen her since she was two months old.

[2] ORS 742.502(1) provides:

"*Every motor vehicle liability policy* insuring against loss suffered by any natural person resulting from liability imposed by law for bodily injury or death

for summary judgment to that effect. Defendant filed a cross-motion for summary judgment, contending that Tanisha is not an insured person under the policy or the statutes. As noted, the trial court granted defendant's cross-motion for summary judgment.

We begin by examining the policy. If the policy does grant coverage by its terms, we need not decide whether the statutes would require it to grant coverage.

The UM section of the policy provides that a "covered person" is the named insured plus any "family member." The policy's general definition section defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

The PIP section of the policy provides coverage to "injured person[s]" and defines "injured persons" as "[t]he named insured or any relative." It further defines "relative" as "a spouse and any other person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured."

Plaintiff claims that Tanisha is a "family member" under the UM definition and an "injured person" under the PIP definition. The parties agree that, at the time of the accident, Tanisha was a resident of plaintiff's household and that she was not related to plaintiff by blood, marriage, or formal adoption. Therefore, Tanisha is covered by the policy only if she is plaintiff's "foster child" or "ward." Neither term is defined in the policy.

---

arising out of the ownership, maintenance or use of a motor vehicle *shall provide uninsured motorist coverage* * * *." (Emphasis added.)

ORS 742.504(2)(a)(A), relating to UM protection, defines "insured" to mean:

"*The named insured* * * * *and, while residents of the same household, the spouse of any such named insured and relatives of either* * * *." (Emphasis added.)

ORS 742.520(1) provides:

"*Every motor vehicle liability policy* issued for delivery in this state that covers any private passenger motor vehicle *shall provide personal injury protection benefits to the person insured thereunder, members of that person's family residing in the same household,* passengers occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle." (Emphasis added.)

The Court of Appeals majority stated that, in order to be a "foster child," the child must have a "legal relationship" to the foster parent-insured. *Joseph v. Utah Home Fire Ins. Co., supra,* 106 Or App at 510. The Court of Appeals reasoned that, because the relevant sentences in the policy use other terms (such as marriage and adoption) that connote "legal relationship[s]," the parties intended only the "legal" meaning of "foster child." *Ibid.* The context of the term does not lead to the Court of Appeals' result, however, because the context creates an ambiguity. "Foster child" in the policy appears, grammatically, to relate back to the term "adoption," but — as will be seen below — the definition of "foster child" (whether the "legal" definition is applied or not) specifies that a foster child is *not* related to the foster parent by adoption.

Some foster child-foster parent relationships are "legal relationships" created through the auspices of the state. In Oregon, the relevant statutes in those circumstances are the statutes concerning child welfare services. ORS ch 418. The legislature has not defined the term "foster child" but has defined "foster home": ORS 418.070(2) defines a "foster home" as "a foster home which is certified by this state," and ORS 418.625(2) defines "foster home" as

> "any home maintained by a person who has under the care of the person in such home any child under the age of 18 years not related to the person by blood or marriage and unattended by its parent or guardian, for the purpose of providing such child with care, food and lodging * * *."

The Children's Services Division (CSD) has, pursuant to its authority under ORS 418.005 to 418.640, promulgated regulations that define "foster child" and "foster home":

> " 'Foster child' is any child placed in a foster home by CSD or any other authorized person or agency.

> " 'Foster Home' refers to any family shelter home, family foster home, or family group home, which has a certificate of approval maintained and lived in by a person who has under his or her care any child(ren) unattended by parents or guardian for the purpose of providing the child(ren) with care, food, and lodging; but, for purposes of these rules, does not include homes approved and supervised by licensed

private child-caring agencies, or by Indian tribes or an institution operated by an Indian tribe or by an Indian organization." OAR 412-22-060(7), (8).

In other words, "foster child" *can* refer to a "legal relationship." The question here, however, is whether CSD's definition of "foster child" under the child welfare statutes is the one to which this insurance policy refers.

As noted above, the policy does not define "foster child," and the context in which "foster child" appears adds to, rather than subtracts from, the ambiguity of the term. The parties presented no evidence, such as evidence of their negotiations, about what meaning they actually intended.

That being so, we interpret the term "foster child" according to what we perceive to be the understanding of the ordinary purchaser of insurance. *See Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985) ("We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance"). *See also* ORS 42.250 (terms of a writing are presumed to have their primary and general meaning). We do not perceive the understanding of the ordinary purchaser of insurance necessarily to limit the term "foster child" to CSD's definition of "foster child" under the child welfare statutes.

Webster's Third New International Dictionary 897 (unabridged 1961) provides the following definition: "foster (as first constituent in such terms as * * * foster child): affording, receiving, or sharing nourishment, upbringing, or parental care though not related by blood or legal ties." Although the third edition does not separately define "foster child," an earlier edition provided this definition: "one who has been cared for by a foster parent." Webster's New International Dictionary 996 (2d ed 1934). The earlier edition defined foster mother or father as "a woman or man who has performed the duties of a parent to the child of another by rearing the child as own child." *Ibid.* Other dictionaries provide similar definitions. *See* Funk & Wagnalls Standard Dictionary (1913), cited in *In re Norman's Estate*, 209 Minn 19, 295 NW 63, 66 (1940) ("fosterage means the care of a * * * foster child * * * — one considered as holding the relationship indicated in consequence of nursing and rearing though not

related by blood"); The Random House Dictionary of the English Language 756 (2d unabridged ed 1987) ("fosterage" is "the act of fostering or rearing another's child as one's own" or "the condition of being a foster child"; "foster child" is "a child raised by someone who is not its natural or adoptive parent"; "foster daughter" is "a girl raised like one's own daughter, though not such by birth or adoption"; "foster father" is "a man who takes the place of a father in raising a child").

We synthesize the following from those definitions: A "foster child" is a child reared by a person other than its biological or adoptive parent; and a foster parent is a person who has performed the duties of a parent to the child of another by rearing that child as the foster parent's own.

Other jurisdictions, when faced with similar situations, have employed a definition of "foster child" much like the one stated in the preceding paragraph. For example, *Brokenbaugh v. New Jersey Mfrs. Ins. Co.*, 158 NJ Super 424, 386 A2d 433, 434-37 (App Div 1978), concerned a factual situation similar to the one presented here. The issue was coverage under the New Jersey Insurance Code for a girl that the insured had reared. The child was the daughter of the woman with whom the insured cohabited, but whom he had not married. The court used the wording of the policy, which the state insurance commissioner had approved, as evidence in construing the legislative intent of the undefined UM and PIP statutory terms "relative" and "family member." The policy contained the same provisions as in this case. The trial court had concluded that the girl was the insured's "foster" daughter and thus a "family member," and the appellate court affirmed. After setting out the dictionary definitions of "foster child," the appellate court concluded that:

> "By using the term[] * * * 'foster child,' the Commissioner indicates that family shall include those who live within the domestic circle of, and are economically dependent on, the named insured." 386 A2d at 436.[3]

---

[3] We find this case useful in defining the term "foster child" in the *policy*, because the policy in *Brokenbaugh* contained the same term, but we do not mean to imply that this analysis has any bearing on the interpretation of our own *statutes*.

Other courts have agreed with the *Brokenbaugh* court's analysis. *See, e.g., Busby v. Ranger Ins. Co.*, 708 SW2d 795, 796 (Mo Ct App 1986) (construing same policy language; child not related by blood, marriage, or adoption, but reared by insured since the age of 13 days, was a "foster child" of insured and entitled to UM coverage); *Pisani v. Travelers Ins. Co.*, 560 NE2d 155 (Mass App Ct 1990) (although no coverage under same policy provision for 16-year-old friend of daughter of insured who had lived in insured's house for six weeks before accident, court "did not discount the possibility" that "the status of * * * foster child could be achieved without formal judicial or governmental order," citing *Busby v. Ranger Ins. Co., supra). See also Houston v. National General Ins. Co.*, 817 F2d 83 (10th Cir 1987) (citing *Brokenbaugh* with approval); *In re Norman's Estate, supra*, 295 NW at 66 (adopting same definition of foster child, many years before *Brokenbaugh*, in construing a will); *Flitton v. Equity Fire and Cas. Co.*, 824 P2d 1132, 1134 (Okla 1992) (agreeing with *Brokenbaugh's* definition of "foster child").

In the common understanding, the defining relationship is one of nurturing, supporting, rearing — one of fostering — and not necessarily a "legal relationship." This court on one occasion illustrated the common usage by referring to one as a "foster child," although the state had not created the fostering relationship. *See Mullart v. State Land Board*, 222 Or 463, 469, 353 P2d 531 (1960) (referring to a girl as a "foster child" of woman who had reared her, not at the request of or through the state, but at the request of the biological mother).

To summarize, the term "foster child" commonly refers to both a foster child placed by the state and to a broader class of relationships discussed above. In this policy, the term is not defined. Because the term "foster child" in this policy could reasonably have either the broader or the narrower meaning, the term is ambiguous. *See Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 411, 551 P2d 478 (1976) ("words or terms may be ambiguous in the legal sense, when they could reasonably be given a broader or narrower meaning, depending upon the intention of the parties in the context in which such words are used"). An otherwise unresolved

ambiguity in an insurance policy is resolved against the insurer, who drafted the document. *See ibid.* ("if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company").

■     Finally, defendant argues that Tanisha is not a "foster child," because her mother also lives in the household, whereas a foster child is reared exclusively by nonbiological parents. Again, the common understanding is not so limited. The policy does not contain such a limitation; indeed, it suggests that the only pertinent inquiry is into the relationship between the named insured and the child. The relevant provisions of the policy define covered persons based on a relationship *to the named insured* because of blood, marriage, adoption, or the status of a ward or foster child. Similarly, the definitions that we have cited focus on the relationship between the child and the person who performs the duties of a parent by rearing the child as his or her own, not the relationship between the child and his or her biological parents. *See Brokenbaugh v. New Jersey Mfrs. Ins. Co., supra,* 386 A2d at 436 (daughter was "foster child" of the plaintiff-insured, even though mother lived in same household; the relationship that daughter had with mother "should not affect the relationship which [daughter] had with [insured] in this context").

In the absence of a different definition in the policy, and in the face of ambiguous provisions in the policy, we conclude that a "foster child" is a child reared by a foster parent-insured who is not its biological or adoptive parent and that a foster parent-insured is a person who has performed the duties of a parent to the child of another by rearing that child as the insured's own. Our holding is limited to construing the term under *this policy,* and we express no opinion as to the meaning of "foster child" in any other context.

Defendant does not dispute that, under the broader definition that we adopt, Tanisha is factually a "foster child," because plaintiff is rearing Tanisha as his own child. Accordingly, we hold that Tanisha is plaintiff's "foster child" under

plaintiff's automobile insurance policy and that she is thereby a covered person under both the UM and PIP provisions.[4]

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.

---

[4] Because of our holding, we need not consider whether the child is a "ward" of plaintiff within the meaning of the policy or whether she is his "relative" or a "member[] of [his] family" within the meaning of the statutes quoted in note 2, above.