Argued and submitted March 31, reversed and remanded with instructions
May 31, pettion for review denied September 26, 1995 (322 Or 167)

# MUTUAL OF ENUMCLAW INSURANCE COMPANY,
a Washington corporation,
*Appellant,*

*v.*

Scott A. HEMSOTH
and Gail L. Hemsoth,
individually and as Conservators for
Katherine Alissa Hemsoth, a minor,
*Respondents.*

(16-94-00645; CA A85318)

896 P2d 607

William G. Earle argued the cause for appellant. With him on the briefs was Hallmark, Keating & Abbott, P.C.

Karsten H. Rasmussen argued the cause for respondents. With him on the brief was Rasmussen & Henry.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

■ Plaintiff Mutual of Enumclaw appeals from an adverse judgment in a declaratory judgment action pertaining to an insurance coverage dispute. The trial court determined, by summary judgment, that a child who had been placed with the defendant insureds for adoption, but who had not yet been adopted at the time of the accident, was not a "foster child" and, hence, not a "family member" excluded from defendants' automobile liability coverage. We reverse.

In December 1987, defendants Scott and Gail Hemsoth began the process of adopting a child, Katherine. In February 1988, they took custody of Katherine under an adoption placement agreement and, from that time on, cared for her as their own child. In October 1988, before the Hemsoths became Katherine's legal parents, Scott was involved in a one-car accident while Katherine was riding with him as a passenger. Katherine was injured, and Gail, acting as Katherine's representative, filed a third-party claim against Scott with plaintiff, the Hemsoth's automobile insurer. Plaintiff denied the claim, citing a provision in the liability insurance portion of Scott's policy that excluded from coverage "bodily injury to you or any family member."[1]

Later, plaintiff filed this action, seeking a declaration that the family member exclusion applied to Katherine's liability claim, to the extent that it involved damages in excess of Oregon's $25,000 financial responsibility limits. The parties filed cross-motions for summary judgment. The trial court granted defendants' motion, denied plaintiff's, and entered judgment accordingly.

Plaintiff assigns error to those rulings, arguing that the exclusion applies to Katherine, because at the time of the accident, she was either the Hemsoth's ward or their foster child and was, therefore, a family member as that term is defined in the policy:

---

[1] Although the policy excluded family members from liability coverage, it expressly included family members under its personal injury protection (PIP) coverage: "**Covered person** as used in this [PIP] coverage means * * * [y]ou and any family member while occupying, or as a pedestrian when struck by, a motor vehicle." It is not apparent from the record whether Gail also made a claim on Katherine's behalf under the PIP provisions of the policy. (Boldface in original.)

> "**Family member** means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." (Boldface in original.)

Plaintiff argues that we must assign the same meaning to the term "foster child" that the Supreme Court did in *Joseph v. Utah Home Fire Ins. Co.*, 313 Or 323, 835 P2d 885 (1992).[2]

In *Joseph*, an uninsured motorist ran over six-year-old Tanisha, who lived with her mother and the plaintiff, with whom her mother cohabited. When the plaintiff filed uninsured motorist and personal injury protection claims with his automobile insurer, seeking compensation for Tanisha's injuries, the insurer denied the claims on the ground that Tanisha was not covered by the uninsured motorist and PIP portions of the plaintiff's policy. Those portions of the policy covered the named insured and "family members," which it defined as

> "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."[3]

Because Tanisha was not related to plaintiff by blood, marriage, or adoption, the dispute focused on whether Tanisha was covered as the plaintiff's foster child. The plaintiff argued that she was his foster child because he had lived with Tanisha and her mother, and had reared Tanisha as his own, from the time she was five months old.

The Supreme Court agreed. The court first noted that the term "foster child" could be understood either in its narrow legal sense, as referring to a child placed by the Children's Services Division in a foster home, or in its broader, ordinary sense, *i.e.*, a child reared by a person other than the child's biological or adoptive parent. *Id.* at 327-30. Given that ambiguity and absence of any contextual clues or

---

[2] Because we can resolve the issue before us based on our interpretation of the term "foster child," we do not address the parties' arguments as to the meaning of the term "ward."

[3] The policy's PIP provision used the term "relative" instead of "family member," but defined that term to include the same group of persons: "a spouse and any other person related to the named insured by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as the named insured."

other evidence that might assist in ascertaining which meaning was intended, the court construed the term against the policy's drafter and settled on the latter, broad meaning:

> "Because the term 'foster child' in this policy could reasonably have either the broader or the narrower meaning, the term is ambiguous. *See Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 411, 551 P2d 478 (1976) ('words or terms may be ambiguous in the legal sense, when they could reasonably be given a broader or narrower meaning, depending upon the intention of the parties in which such words are used'). An otherwise unresolved ambiguity in an insurance policy is resolved against the insurer, who drafted the document. *See ibid.* ('if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company').
>
> "* * * * *
>
> "In the absence of a different definition in the policy, and in the face of ambiguous provisions in the policy, we conclude that a 'foster child,' is a child reared by a foster parent-insured who is not its biological or adoptive parent and that a foster parent-insured is a person who has performed the duties of a parent to the child of another by rearing that child as the insured's own." *Id.* at 330-31.

Plaintiff contends that *Joseph* controls our decision here and that we must assign the same meaning to the term "foster child" that the Supreme Court did there. Defendants point out, however, that the court in *Joseph* expressly limited its holding regarding the meaning of the term "foster child" to the particular policy before it:

> "Our holding is limited to construing the term under *this policy*, and we express no opinion as to the meaning of 'foster' child in any other context." *Id.* at 331 (emphasis in original).

They maintain that it is the analysis in *Joseph,* and not the particular interpretation assigned to the term "foster child" there, that must be followed. That analysis, defendants argue, leads to a different result in this case.

Defendants begin by pointing to the same uncertainty regarding the meaning of the term "foster child" in the policy language here that was present in *Joseph*: "foster child" can have the narrow legal meaning employed in the

child welfare laws or the broad "ordinary" meaning encompassing any situation in which a person acts as a parent to a child who is not his or her own. They argue, however, that, under the facts of this case, when the "construction against the drafter" principle is applied to resolve that ambiguity, it cuts in the opposite direction than it did in *Joseph*. In particular, they argue that, whereas in *Joseph*, a broad construction disfavored the insurer, by bringing the child within the policy's "first-person" PIP coverage, here, a narrow construction will have the effect of narrowing the "family member" exclusion from liability coverage and, thus, bring the child within that coverage.

We agree with defendants that *Joseph* does not, in and of itself, compel us to define "foster child," for purposes of exclusion from liability coverage, in any particular way. However, we believe that defendants' explanation of *Joseph's* analysis is flawed in that it bypasses the threshold inquiry of determining whether an ambiguity actually exists:

> "For a term to be ambiguous in a sense that justifies resort to the * * * rule [that ambiguous terms in insurance policies are to be construed against the insurer], * * * there needs to be more than a showing of two plausible interpretations; given the breadth and flexibility of the English language, the task of suggesting plausible alternative meanings is no challenge to capable counsel. Competing plausible interpretations simply establish ambiguity that will require some interpretive act by the court. This triggers a series of analytical steps, any one of which may resolve the ambiguity. *The rule on which plaintiffs rely is the last of these steps. In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer only if two or more plausible interpretations of that term withstand scrutiny, i.e., continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.*" *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992) (emphasis supplied).

Language in *Joseph* shows that the court did, in fact, engage in that inquiry, and resorted to the principle of construction against the insurer *only* after exhausting all other means for resolving that ambiguity:

"As noted above, the policy does not define 'foster child,' and the context in which 'foster child' appears adds to, rather than subtracts from, the ambiguity of the term. The parties presented no evidence, such as evidence of their negotiations, about what meaning they actually intended." *Joseph*, 313 Or at 328.

Defendants, while identifying two plausible meanings of "foster child," do not examine them in light of "the particular context in which the term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction*, 313 Or at 470. Instead, they immediately invoke the "construction against the drafter" rule.

Although in *Joseph* such contextual analysis did not assist the definitional inquiry, we believe that it is conclusive in this case. Here, the policy includes only a single definition of "family member" and that definition includes, without amplification, "foster child." The term "family member" is employed throughout defendants' policy, so that it pertains not only to the exclusion from third-party coverage, but also, as in *Joseph*, to inclusion under first person PIP and uninsured motorist coverage. Given the singular definition of "family member," and the omnibus use of that term throughout the policy, the most reasonable contextual reading is that "family member," including its subsidiary component "foster child," should be given the same meaning throughout the policy.[4]

*Joseph*, as stated, is not directly dispositive of the meaning of foster child for purposes of exclusion from liability coverage. Nevertheless, because of the identity of operative policy language in this case and in *Joseph*, "foster child" for purposes of defendants' *first-party* coverage necessarily has the same expansive content that it did in *Joseph*.

Thus, to adopt defendants' position that Katherine was not a "foster child" for purposes of the family member exclusion from liability coverage, we would have to agree that "foster child" means one thing for purposes of PIP coverage

---

[4] Thus, any child who is a "foster child" and is, thus, covered as a family member under the policy's PIP and uninsured motorist provisions is, concomitantly and necessarily, excluded from liability coverage.

and something quite different for purposes of liability coverage under the same policy. We decline to do so. A variable construction of foster child is unreasonable when viewed in "the broader context of the policy as a whole." *Hoffman Construction*, 313 Or at 470. We conclude, accordingly, that foster child, as used in defendants' policy, means

> "a child reared by a foster parent-insured who is not its biological or adoptive parent and that a foster parent-insured is a person who has performed the duties of a parent to the child of another by rearing that child as the insured's own." *Joseph*, 313 Or at 331.

Consequently, Katherine was a foster child for purposes of the family member exclusion from liability coverage.

Defendants stated in their motion for summary judgment that there are no factual issues in dispute, and that the sole issue to be determined is the question of whether the family member exclusion in the Hemsoth's automobile insurance policy applied to Katherine. We have decided that purely legal issue in plaintiff's favor. Therefore, the trial court erred in granting defendants' motion for summary judgment. Because plaintiff's cross-motion for summary judgment was based exclusively on that identical issue, the trial court also erred in denying plaintiff's cross-motion.

Reversed and remanded with instructions to enter summary judgment for plaintiff.