DONEGAL MUTUAL INSURANCE
COMPANY, Appellant

v.

Anthony RAYMOND, Appellee.

Superior Court of Pennsylvania.

Submitted Dec. 5, 2005.

Filed May 8, 2006.

Gerald A. Connor, Scranton, for appellant.

Edward R. Dougherty, Havertown, for appellee.

BEFORE: GANTMAN, PANELLA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Donegal Mutual Insurance Company appeals the grant of summary judgment in favor of Appellee Anthony Raymond on grounds that Appellee is not an "insured" under their automobile policy. We affirm.

¶ 2 Preliminarily, we observe this case involves a declaratory judgment action where the trial court granted summary judgment to Appellee and denied the same relief to Appellant. A motion for summary judgment is appropriate under the Declaratory Judgments Act. 42 Pa. C.S.A. § 7533; *Mt. Village v. Bd. of Supervisors*, 582 Pa. 605, 613, 874 A.2d 1, 5 (2005).

¶ 3 In analyzing the grant of summary judgment in favor of Appellee, our scope of review is plenary. *Mt. Village*, at 613, 874 A.2d at 5. The standard of review is clear: we will reverse an order only where the trial court committed an error of law or clearly abused its discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 585, 812 A.2d 1218, 1221 (2002). Further, summary judgment is appropriate only where the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 585, 812 A.2d at 1221. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* at 585, 812 A.2d at 1221. Only when the facts are so clear that reasonable minds cannot differ can a trial court properly enter summary judgment. *Mt. Village*, at 615, 874 A.2d at 5.

¶ 4 The issue presented in this case is not complicated, *i.e.*, whether Appellee was a "ward" or "foster child" such that the injuries sustained while a passenger in a vehicular accident are the obligation of Appellant to pay? However, resolution of the question is not simple because the insurance policy defines neither of these terms. That having been said, the facts underlying the case are as follows.

¶ 5 On the 28th day of August, 1997, Appellee was placed as a foster child with Deborah and Jerry Decker. This was the third foster family for Appellee over a period of several years. On June 12, 1998, Appellee was removed from the Decker household and returned home to his mother. On September 28, 1998, Appellee's mother and her children were evicted from their home. Appellee phoned the Deckers to ask if he could stay with them because of the change in his circumstances. Mrs. Decker accommodated Appellee by picking him up the same day as their conversation. Deposition of Appellee, 3/11/02, at 24–25, 49–50; Deposition of Donald R. Nicastro (executive director of CYS in Lackawanna County), 11/11/02, at 20–21.

¶ 6 On September 28th, Mrs. Decker called CYS (case worker, Carolyn Simonetti) to inform the agency that Appellee called and asked to stay with her. Appellee stayed at the Deckers' home on September 28th until school was out. Thereafter, Appellee's friend drove him to his aunt's home to pick up a tape—the intent was to return to the friend's house after retrieving the tape. On the way to the friend's house, the vehicle was involved in an accident in which the front seat passenger was killed and Appellee was thrown from the vehicle. Appellee was treated and released from the hospital on September 30, 1998.[1]

---

1. This is the official date that Appellee was considered placed into foster care by CYS and

¶ 7 The Deckers were covered by a personal automobile policy issued by Donegal, which provided first party medical benefits and stacked underinsured motorist benefits. On October 5, 1998, Appellee made a claim for first party medical benefits under the Deckers' policy on the basis that he was either a ward or a foster child of the Deckers at the time of the accident. On March 29, 1999, a claim was also made on the underinsured policy on the basis that Appellee was either a ward or a foster child. Both claims were denied, and Appellee instituted suit to seek compensation for injuries sustained.

¶ 8 Appellant filed a motion for summary judgment contending the evidence was clear that Appellee was not considered a foster child until CYS obtained a voluntary consent or a court order. There being no voluntary consent or court order at the time of the accident, Appellant argued that summary judgment was appropriate because Appellee was just "a private citizen living with another private citizen." Furthermore, since the voluntary consent of Appellee's father was not obtained until two days after the accident (September 30, 1998), Appellant claimed Appellee could not be a "ward" of the Deckers at the time of the accident given the "absen[ce] of a Court Order directing otherwise." *See* Appellant's brief, at 16.

¶ 9 The trial court took the position that CYS was cognizant of Appellee's family dilemma, and the expediency with which the Deckers acted to advise the agency of the same and took responsibility for Appellee's welfare led the trial court to opine that, "under the facts that existed in this case, the [Appellee] was a ward of the Deckers."[2] Trial court opinion, 7/15/05, at

that the Decker family was reimbursed for related expenses. Deposition of Donald P. Nicastro, 11/11/02, at 10. Appellant relies upon the September 30, 1998, date as the commencement of the foster care experience for Appellee, which post-accident occurrence is utilized by the insurer to deny coverage to Appellee because he was not adjudicated a "ward" or "foster child" by CYS or the trial court at the time of the September 28, 1998, automobile accident.

2. Appellee remained with the Deckers from September 28, 1998, until June 10, 1999, which latter date was when he went back to live with his mother. Deposition of Appellee, 11/11/02, at 13. Notwithstanding the temporary nature of Appellee's stay with the Deckers, the trial court found Appellee was a "ward" of the Deckers, and, in so holding, stated:

> [Appellant] would have us believe that since certain CYS forms were not filled out at the time of the accident, [Appellee] cannot be considered a ward. This [trial c]ourt strongly disagrees. The facts clearly show that CYS was aware of [Appellee's] predicament. It was aware that [Appellee] was rendered homeless and was residing with the Deckers. In light of this knowledge, the facts indicate that CYS took no immediate

steps towards [Appellee]. CYS did not feel the need to take [Appellee] into their custody or control. It took no immediate action despite the knowledge of the serious emergency situation that existed.

> Instead, CYS allowed [Appellee] to stay with the Decker [household from September 28, 1998, through June of 1999]. While it may have considered this stay temporary, it is clear to the [trial c]ourt that CYS understood [Appellee] would be protected and cared for during his time with the Deckers, however brief. In other words, the actions of CYS indicate that it treated [Appellee] as a ward of the Deckers. No formal paperwork is necessary for a person to be treated as a ward, especially if an emergency situation is involved.

> This is not to say that no paperwork is ever required. However, it takes time to fulfill the requirements of CYS. During that "time," the facts clearly show [Appellee] was being cared for and protected by the Deckers and CYS was fully apprised of the situation. It is the opinion of this [trial c]ourt that under the facts that existed in this case, [Appellee] was a ward of the Deckers.

Trial court opinion, 7/15/05, at 4–5. We agree.

5. Thereafter, the trial court entered an order granting Appellee's motion for summary judgment. A timely appeal followed raising a single contention; to-wit:

> WHETHER [APPELLANT] [WA]S ENTITLED TO [SUMMARY] JUDGMENT AS A MATTER OF LAW BECAUSE [APPELLEE] WAS NOT AN "INSURED" AS OF THE DATE OF TH[E] AUTOMOBILE ACCIDENT; AND THEREFORE NOT ENTITLED TO ANY BENEFITS UNDER [APPELLANT'S] POLICY?

Appellant's brief, at 5.

¶ 10 Initially, we find it necessary to recite the language of the policy at issue, which provided the Deckers with first party medical benefits; to-wit:

I. DEFINITIONS

> The Definitions section is amended as follows:
>
> * * * *
>
> D. *"Insured" as used in this endorsement means:*
>
> 1. You or *any "family member"*:
> 2. Any other person while:
> a. "Occupying" "your covered auto"; or
> b. Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto."
>
> If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

II. FIRST PARTY BENEFITS COVERAGE

INSURING AGREEMENT

A. BASIC FIRST PARTY BENEFIT

> *We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury".* The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".
>
> Subject to the limit shown in the Schedule of Declarations, the Basic First Party Benefit consists of:
>
> Medical Expenses. Reasonable and necessary medical expenses incurred for an "insured's":
>
> 1. Care;
> 2. Recovery; or
> 3. Rehabilitation.
>
> This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.
>
> Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18–month time limit will not apply to the payment of the additional medical expenses. [emphasis added].

The automobile insurance policy also provided stacked underinsured motorist benefits, which provided:

> A. *We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":*
>
> 1. *Sustained by an "insured"; and*
> 2. *Caused by an accident.*
>
> * * * *
>
> B. *"Insured" as used in this endorsement means:*
>
> 1. You or *any "family member"*;

2. Any other person "occupying" "your covered auto";

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above. [emphasis added].

Furthermore, the endorsement in the Deckers' automobile insurance policy defines "family member" as:

6. *"Family member"* means a person related to you by blood, marriage or adoption who is a resident of *your household. This includes a ward or foster child.* [emphasis added].

¶ 11 Appellee filed claims with Donegal for first party medical benefits and underinsured motorist benefits contending he was a ward or foster child of the Deckers at the time of the accident, which categorization he argued availed him coverage. In response, Donegal denied Appellee benefits because "he did not qualify as an insured" under the terms of the automobile insurance policy issued to the Deckers. *See* Appellant's brief, at 14. We hold otherwise in a case of first impression.

■ ¶ 12 The legal principles germane to reviewing coverage questions arising under insurance policies are well-established: "a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Harleysville Insurance Companies v. Aetna Casualty and Surety Insurance Co.,* 568 Pa. 255, 795 A.2d 383 (2002) (*quoting Travelers Cas. & Sur. Co. v. Castegnaro,* 565 Pa. 246, 772

A.2d 456, 459 (2001)). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. *Madison Constr. Co. v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999).

■ ¶ 13 However, a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction. An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning. *The Insurance Co. of Evanston v. Bowers, et al.,* 758 A.2d 213 (Pa.Super.2000); *Tenos v. State Farm Insurance Co.,* 716 A.2d 626, 629 (Pa.Super.1998).

¶ 14 Appellant takes the position no ambiguity exists in the insurance policy as the terms are clear and unambiguous allowing one to understand that you must be a "family member"—this includes a "ward" or "foster child"—to be "insured," and, in turn, you must be "insured" to receive first party medical benefits and/or underinsured motorist benefits. Further, Appellant argues that Appellee's failure to obtain a court order labeling him a "ward" or "foster child" excludes him from the sphere of claimants entitled to recover benefits under the policy of insurance at issue here. *See* Appellant's brief, at 19 ("While this case presents a unique set of facts and timetable, Appellant respectfully puts forth that such complex legal relationships of 'ward,' 'guardian,' and 'conservator' simply cannot arise by default or inaction, but rather do in fact require formal action by a Court for legal recognition.").[3] In support of its position, Appellant cites *Pisani v. Travelers Ins. Co.,* 29 Mass.App. Ct. 964, 560 N.E.2d 155 (1990).

---

3. The protocol followed by CYS before a child in their custody could be considered a "foster child" required either the execution of a voluntary consent by a parent or a court order to that effect. Deposition of Donald P. Nicastro, 11/11/02, at 9.

¶ 15 In *Pisani,* the sixteen-year-old Kerry Pisani left home and moved in with the family of her best friend, Victoria Johnson. After the passage of six weeks, Kerry was killed in an accident while a passenger in her best friend's car. The administratrix of Kerry's estate, her mother, sought to recover damages under the underinsured motorist coverage policy purchased by Kerry's best friend's parents. The theory of recovery was that Kerry was a *"de facto* ward" of the Johnson household.[4] The trial court granted summary judgment in favor of the insurance company finding that Kerry was not a ward of the elder Johnsons. On review, the Appeals Court of Massachusetts affirmed holding that the meaning of "ward" "comes about through court or State action." *Pisani,* 560 N.E.2d at 156. Absent such legal proceedings defining Kerry the "ward" of another, the administratrix was precluded from recovering for the personal injuries of the decedent while in the household of the insureds/Johnsons.

¶ 16 We do not take issue with the disposition in *Pisani.* Rather, we note that the Appeals Court left open the question of whether the status of a ward could be achieved without a court order. "We do not discount the possibility that the status of a ward or foster child could be achieved without formal judicial or governmental order." *Pisani,* 560 N.E.2d at 156. Consistent with the preceding in *Curtis v. Commerce Ins. Co.,* 11 Mass.L.Rptr. 50, 2000 WL 50066 (Mass.Super.1999), the Superior Court of Massachusetts granted summary judgment in favor of the estate of Margaret H. Harvard, who had been killed in an automobile accident, and the estate sought benefits under an automobile policy issued to a woman with whom Ms. Harvard lived, Jacqueline O'Grady. *Id.,* 11 Mass.L.Rptr. 50. More specifically, the estate claimed Ms. Harvard was a ward of Ms. O'Grady's, and as such, qualified for coverage as a household member under the policy. *Id.,* 11 Mass.L.Rptr. 50.

¶ 17 In the course of entering summary judgment in favor of the estate of Margaret H. Harvard, and allowing it to collect under a policy of insurance issued to decedent's household member/Ms. O'Grady, the Massachusetts trial court (a/k/a Superior Court) stated, as herein relevant:

Indeed, our Supreme Judicial Court has stated that, "We recognize, as have courts in other jurisdictions, that, because modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term 'household member' can have no precise or inflexible meaning [ . . . ]. Analysis of the issue necessarily must proceed on a case-by-case basis with an evaluation and balancing of all relevant factors." *Vaiarella v. Hanover Insurance Company,* 409 Mass. 523, 526–527, 567 N.E.2d 916 (1991).

*Id.,* 11 Mass.L.Rptr. 50; *see also Joseph v. Utah Home Fire Insurance Co.,* 313 Or. 323, 835 P.2d 885 (1992), wherein the Supreme Court of Oregon held that a child raised by Appellant, although not related by blood, marriage, or formal adoption, was entitled to coverage under his automobile insurance policy because it covered the insured's "foster child[ren]," and the child was Appellant's "foster child" within the meaning of the policy.[5]

---

4. Under the Massachusetts uninsured or underinsured automobile insurance policy, the insurer agreed to pay damages to or for "any household member." This included anyone living in the household, which included "wards or foster children." *Pisani,* 560 N.E.2d at 155–56.

5. The Oregon Supreme Court, in support of its finding of coverage for the insured's "fos-

¶ 18 We wish to note that our discussion of the out-of-state decisions is to rebuff Appellant's reliance upon the same for reversal of the trial court's ruling, and they are not discussed as a predicate for our disposition.

■■ ¶ 19 Quite the contrary, we look to the public policy of this Commonwealth as the framework within which to deny Appellant's request for relief.

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy [ . . .]. Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts [ . . .] contrary to public policy.

*Hall v. Amica Mutual Insurance Co.,* 538 Pa. 337, 347–48, 648 A.2d 755, 760 (1994) (citations omitted).

■ ¶ 20 Appellee contends that he is entitled to first party medical benefits and underinsured motorists benefits, and that he is legally a ward of the Deckers, and, therefore, a family member of the named insured as defined by the policy. Appellee also argues the policy should be construed to include him as an insured pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S.A. §§ 1701–1799.7, definition of insured. *See* Appellant's brief, at 20. Finally, Appellee contends he is entitled to benefits because he was a ward placed in the custody of the Deckers, and, therefore, resided in the household of the named insured during a time crucial to ascertaining the coverage period. In support of this contention, Appellee directs our attention to the definitional section of the MVFRL, specifically § 1702, wherein the term insured is defined as "(1) an individual identified by name as an insured in a

---

ter child," made the following remarks; to-wit:

As noted above, the policy does not define "foster child," and the context in which "foster child" appears adds to, rather than subtracts from, the ambiguity of the term. The parties presented no evidence of their negotiations, about what meaning they actually intended.

That being so, we interpret the term "foster child" according to what we perceive to be the understanding of the ordinary purchaser of insurance.

\* \* \* \*

We synthesize the following from th[e preceding caselaw] definitions: A "foster child" is a child reared by a person other than its biological or adoptive parent; and a foster parent is a person who has performed the duties of a parent to the child of another by rearing that child as the foster parent's own.

\* \* \* \*

In the absence of a different definition in the policy, and in the face of ambiguous provisions in the policy, we conclude that a "foster child" is a child reared by a foster parent-insured who is not its biological or adoptive parent and that a foster parent-insured is a person who has performed the duties of a parent to the child of another by rearing that child as the insured's own. *Joseph,* 313 Or. at 328, 329, 331, 835 P.2d at 885.

Herein, the policy of insurance does not define the meaning of "foster child," and, as such, the term is open to interpretation as in *Joseph* to be "a child reared by a foster parent-insured who is not its biological or adoptive parent and [ . . .] rear[s] that child as the insured's own." *Id.* However, given our disposition, we need not determine whether Appellee fell within the category of a "foster child" to qualify for coverage under Appellant's insurance policy. *See* footnote 6 *infra* and accompanying discussion.

policy of motor vehicle liability insurance. (2) If residing in the household of the named insured: [ . . . ] (ii) a minor in the custody of either the named insured or relative of the named insured." 75 Pa. C.S.A. § 1702. Appellee maintains that § 1702 requires that he be "residing in the household of the named insured as 'a minor in the custody of the named insured' " when the accident occurred to be considered covered under the named insured/Deckers' policy. Appellant's brief, at 20. We agree. *Cf. Bowers,* 758 A.2d at 217 (MVFRL's definition of insured did not include a ward/minor child in the custody of named insured and residing in the same household because the named insured was a corporation. "As was the case with the definition of insured under the policy with respect to 'family member,' the first part of the MVFRL's definition of insured likewise limits the named insured to an individual[;]" and, in the absence of such status, Appellant's "reliance on § 1702 is unavailing.").

¶ 21 Consequently, consistent with the MVFRL's definition of insured, we hold Appellee comes within the ambit of the statutory definition, which is not violative of this jurisdiction's public policy endorsing enforcement of contractual obligations, read in a common sense fashion, allowing for insurance coverage permissible by the facts viewed against the backdrop of the applicable law. *Contrast Bowers, supra.*

¶ 22 Additionally, the record discloses that Appellee resided with and was cared for by the Deckers between August 28, 1997, and June 12, 1998, which latter date he returned to live with his biological parent. It was only when Appellee phoned the Deckers on September 28, 1998, and advised them of his plight that the former foster parents agreed to provide him with living arrangements. These amenities included sleeping accommodations, a place to keep all of Appellee's clothes, and a family physician to attend to the medical needs of the child while under the Deckers' roof. Deposition of Appellee, 3/11/02, at 10, 13. Furthermore, Appellee remained with the Deckers for almost ten (10) months after September 28, 1998, despite CYS' knowledge of his whereabouts. To interject into this family environment the lack of a parental consent agreement or a court order as the predicate to deny Appellee ward status on the day of accident is pure sophistry. *See* Deposition of Donald P. Nicastro, 11/11/02, at 22–23 (Appellee's father signed a voluntary agreement on September 30, 1998, and the court issued an order on October 9, 1998, naming Appellee "a ward of the Deckers[.]").

¶ 23 Whether created by court order or not, Appellee was under the protection of the Deckers and had been for almost one year before the vehicular accident. All of the elements of a relationship of protector and ward were present except for a formal designation of the relationship from a court of competent jurisdiction or a parental execution of a consent agreement. Nonetheless, the relationship that existed was created by a history of the Deckers providing Appellee with care and protection, and his integration into the Deckers' family continued as of the date of the accident on September 28, 1998, and beyond until reunited with his natural mother on June 10, 1999. Deposition of Appellee, 3/11/02, at 13.

¶ 24 Accordingly, it is the opinion of this Court that Appellee was a "ward" as that term is used in the policy by virtue of the fact that Appellee was the ward of the

Deckers.[6]

¶ 25 Judgment affirmed.

---

6. In light of our holding, we find it unnecessary to decide whether Appellee is a "foster child" of the Deckers within the meaning of the policy. *Cf. Joseph*, 313 Or. at 332 n. 4, 835 P.2d at 885 n. 4 ("Because of our holding [that Tanisha is plaintiff's foster child under the plaintiff's automobile insurance policy], we need not consider whether the child is a 'ward' of plaintiff within the meaning of the policy [...].").